In the United States District Court of Delaware

Harry L. Samuel
Plaintiff
V.
State of Delaware

07-540-

On Appeal from the Supreme Court of the State of Delaware

Brief

FILED
SEP - 7 2007
U.S. DISTRICT COURT
DISTRICT OF DELAWARE

Harry L. Samuel, Pro se
Delaware Correctional Center
Harry L. Samuel

Date: 9-3-2007

## Nature and Stage of Proceedings

The Defendant, Harry Samuel, was convicted, after a jury trial, of assault first degree, assault second degree, two counts of assault in a detention facility, and four counts of Possession of a deadly weapon during the Commission of a felony with respect to each Predicate offense.

On appeal, the Court found that the assault offenses were lesser lesser included offenses of the assault in a detention facility offenses and remanded for resentencing on the two assault in a detention facility offenses and four weapons offenses. Samuel v. State, 1996 WL 191068 (Del.) (Attached as Exhibit).

In July 2005, the Court, in Priest V. State 879 A.2d 575 (Del. 2005). the Court, in Priest v. State 879 A.2d 575 (Del. 2005). interpreted the weapons offense statute and ruled that a defendant could not be convicted of a weapons offense if the defendant was was acquitted of the Predicate felony thus overruling Prior decisions Permitting the inconsistent Possession of a deadly weapon conviction as that felony to Stand on grounds of, inter alia, jury lenity.

As a consequence of the Priest decision, the Defendant moved for Post-Conviction relief in the Superior Court, requesting that the two weapons offense convictions Predicate to the assault Convictions that had been vacated on appeal also be vacated under Priest. The Superior Court denied the Defendant's motion for Post-Conviction relief. State v. Samuel, Del. Super., I.D. No. 93005924DI, Ableman, J. (March 29, 2006) (Letter) (Attached as Exhibit).

The Defendant thereafter docketed a notice of appeal and appealed to the Supreme Court of Delaware. The Supreme court of Delaware rule that the appeal is moot based opon consideration of the briefs and arguments of the Parties, and based upon Appellant's representation in Supplemental briefing that this appeal is moot.

The Defendant now appeal to the united States District Court.

# Summary of ARGUMENT

1. The Defendant was originally convicted of four substantive felony offenses and four weapons offenses related to the Predicate offenses. In his original appeal, the court vacated two of the Predicate felony offenses as included offenses but remanded those and four weapons offenses for resentencing. Several years later, the court overturned its original legal basis for Sentencing on a weapons offense-- jury lenity or sufficiency of the evidence -- even if the defendant was not convicted of the Predicate offense on the ground that, according to the language of the weapons offense statute, a defendant could not be convicted of a weapons offense if he had been found not guilty of the Predicate felony offense. On that ground, the Defendant requested that the Superior Court vacate the two weapons offense sentences on which he had been sentenced that were related to the felonies that had previously been vacated. The Superior Court's denial of his Post-conviction relief motion as untimely was error because new substantive rules of law restricting the scope of criminal offenses should be applied retroactively on Post-conviction review.

2. The impact the Indictment have on the Claims Defendant was denrived deprived 14th Due Process right because the Defendant was not charged with a weapon for either of the assault in a Detention facility counts which denied the Defendant to prepare his Defense Differently as to a specific Indicted Charge.

3. Counsel representation fell below a reasonable amount of Professionableness which deprived the Defendant his 6th amendment the right to effective assistants of counsel. Counsel did not consult with the Defendant to find out what the Defendant wishes was. Counsel did not inform the Defendant on the oral argument. Counsel never inform the Defendant about the Supreme court of Delaware letter regardind what impact the Indictment have on the Claims Presented before Counsel mooted the appeal in Supplemental Brief. Counsel Did not raise the issues/Arguments that the Defendant ask Counsel to raise or file a rehearing as the Defendand requested once the Defendant learned of Courts letter about the Indictment, a issue at the oral argument and Counsel Supplemental Brief mooting the appeal.

## Statement of Facts

The Defendant, Harry Samuel, was arrested on June 15, 1993, and Charged with using two Knives to assault two Correctional officers at the Plummer work Release center. (A1). He was convicted, after a jury trial, of first degree assault, assault in a detention facility, and two counts of Possession of a deadly weapon during the Commission of a felony as to one correctional officer. He was convicted of assault Second degree, assault in a detention facility, and two counts of Possession of a deadly weapon during the Commission of a felony as to the Second officer. He had been charged with a weapons offense as to each related Predicate felony.

On appeal, the Court found that the assault offenses were lesser included offenses of the assault in a detention facility offenses and remanded for resentencing on the two assault in a detention facility offenses and four weapons offenses. Samuel v. State, 1996 WL 191068 (Del.) (Attached as Exhibit).

In July 2005, the court, in Priest v. State 879 A.2d 575, 583 (2005). interpreted the weapon offense Statute and ruled that a defendant Could not be convicted of a weapons offense if the defendant was acquitted of the Predicate Felony thus overruling Prior decisions Permitting the inconsistent Possession of a deadly weapon Conviction as that Felony to Stand on grounds of, inter alia, jury lenity. Following the Priest decision, the Defendant moved on that basis For Post-conviction relief in the Superior Court, requesting that the two weapons offense convictions and Sentences Predicate to the assault convictions that had been vacated in his direct appeal also be vacated under Priest. The Superior court denied the Defendant's motion for Post-conviction relief. Samuel v. State, Del. Super., I.D. No. 93005924D I Ableman, J. (March 29, 2006) (Letter) (Attached as Exhibit).

Thereafter the Defendant appeal to the Supreme Court of Delaware the Supreme Court of Delaware dismissed the appeal the appeal as moot.

I: The Superior court Incorrectly Applied Rule 61 on Post-Conviction Relief Concerning the Retroactivity of Decisions Establishing a Substantive Rule of Law.

## Argument

Prior to 2003, the "in furtherance of" language in Delaware's felony murder statute, 11 Del. C. § 636(a)(2), was interpreted to require only that the homicide accompany the underlying felony. Chaa v. State, 604 A.2d 1351, 1363 (Del. 1992). In 2003, however, the court closely reexamined Delaware's felony-murder statute and found that the "in furtherance of" language required more than merely a temporal relationship between the underlying felony and the resulting homicide but also a causal relationship in the sense that the homicide was not the purpose of but did facilitate the commission of the underlying felony. Williams v. State, 818 A.2d 906, 913 (Del. 2003).

Several months after the court's decision in williams, a different Prisoner Previously Convicted of felony murder in 1997 moved for Post-Conviction relief in the Superior Court on the ground that the narrowed Substantive scope of the felony-murder statute applied by the Court in williams invalidated his own Convictions of felony-murder. State v. Kirk, 2004 WL 396407 (Del. Super.) (Attached hereto as Exhibit). ordinarily, a motion for Post-Conviction relief filed six years after Conviction and Sentencing would be Procedurally barred as untimely filed under Superior Court Criminal Rule 61(i)(1). The Superior Court, however, found that narrowed Substantive application of the felony-murder Statute recognized in Williams was a "newly recognized right" under Rule 61(i)(1) and that the "fundamental Fairness" exception contained in Rule (i)(5) required that Kirk's Felony murder convictions be overturned. State v. Kirk, 2004 WL 396407*6 (Del. Super.). On appeal, the Court agreed that "where a defendant succeeds in demonstrating a 'newly recognized right' that results in a miscarriage of justice, his untimely Postconviction motion will be Permitted to Proceed to a determination on the merits." Kirk v. State, 2005 WL 3526325 *1, n.6 (Del.) (Attached hereto as Exhibit

This legal Principle, that a "newly recognized right" based on the narrowed Substantive definition of a Criminal offense is applied retroactively, is fully Consistent with how federal courts apply their Procedural default rules in Post-Conviction Proceedings. The court has Previously adopted these federal retroactivity Principles first announced in Teague v. Lane 489 U.S. 288 (1989). in Construing Delaware's own Post-Conviction rule. Flamer v. State, 585 A.2d 736, (Del. 1990); Bailey v. State, 588 A.2d 1121, 1126 n.5 (Del. 1991). Under these rules, there are two exceptions to the general rule of non-retroactivity of Court decisions on Collateral Post-Conviction review. Under the first exception, applicable in this Case, "a new rule should be applied retroactively if it Places 'certain Kinds of Primary, Private individual Conduct beyond the Power of the Criminal lawmaking authority to Proscribe.'" Teague, 489 U.S. at 311.[5] see also Penry v. Lynaugh, 492 U.S. 302, 330 (1989) ("The First exception set forth in Teague should be understood to cover not only rules forbidding Criminal Punishment of Certain Primary Conduct but also rules Prohibiting a certain category of Punishment for a Class of defendants because of their Status or offense.").

The Supreme court has also more recently explained that "new substantive rules ... include decisions that narrow the scope of a Criminal Statute by interpreting its terms." Schiro v. Summerlin, 542 U.S. 348, 351 (2004) (emphasis in original). Furthermore, "such rule apply retroactively because they necessarily carry a significate risk that a defendant stands Convicted of an act that the law does not make Criminal or faces a Punishment that the law Cannot impose upon him." Id. at 352.

Thus, the Superior Court Correctly decided in the Kirk Post-Conviction Case that the new Substantive rule in the Williams Case narrowing the Scope of the Felony murder Statute must be applied retroactively for the defendant's benefit because of the "fundamental fairness" exception under Rule 61.

---

5 under the second exception to the general rule of non-retroactivity, not applicable here, a Procedural rule may apply retroactively if it "requires the observance of those Procedures that... are implicit in the concept of ordered liberty. Teague, 489 U.S. at 313.

Like the Substantive rule in williams narrowing the application of the felony-murder statute, the Court's decision in Priest finding that a defendant could not be Convicted of Possession of a deadly weapon during the Commission of a felony if he was acquitted of that Predicate felony is also a Substantive rule of law restricting the application of the felony murder Statute.

In this Case, the Defendant asked the Superior Court vacate his Convictions on the two additional weapons offenses on which he had been originally Sentenced because the underlying Predicate assault offenses had been vacated in his original appeal. under the Court's decision in Priest, he would not have been Convicted of and Sentenced for the weapons offense in question if he was not Convicted of the Predicate felonies of assault.[6] The Superior Court declined to apply the Priest decision retroactively, however, on the ground that the Defendant's request for relief under Priest was untimely and that no exception to the rule of non-retroactivity applied. State v. Samuel, Del. Super., I.D. NO. 93005924DI, Ableman, J. (March 29, 2006) (Letter). The bases for that decision Conflicted with the Superior Court's own decision in Kirk, as well as the retroactivity jurisprudence of this Court under Superior Court Rule 61, and, therefore, Should be reversed.

---

6 In his original appeal, the Court applied a sufficiency of the evidence standard of review to uphold the additional weapons offenses Convictions rather than an examination of the language of the weapons offense statute itself. See Priest v. State, 879 A.2d at 582, n.37.

II.' Denied 14th Due Process right, was not Indicted/Charged with Possession of a Deadly Weapon during the Commission of a felony for either of the assault in a Detention facility Charges.

## Argument

The ~~[illegible]~~ Plaintiff Samuel, was Double JeoPardyed twice in the Indictment. The Plaintiff Samuel, was indicted for 1st degree assault with a related weapon and assault in a Detention with NO related weapon as to victim CiPolla. Exhibit 13, 14, 15, A-16

In the same manor for a second Victim Jesse who was Cut on his thumb. The Plaintiff Samuel, was Double JeoPardied in the Indictment. The Indictment Charged Samuel, with 2nd degree assault with a related weapon and assault in a Detention facility with NO related weapon. Exhibit A-13, A-14, A-15, A-16

The Delaware SuPreme Court ordered the first degree assault and the second degree assault to be vacated or merged into the two counts of assault in a detention facility and Samuel, was to be Resentenced by a different Judge.

At Samuel, Trial, Sentence and ReSentence Samuel, was represented by Counsel Raymond M. RadulSKi, Esq., It is SupPorted by the record and by the resentencing record (Exhibit A 74, A 75, A 76) that RadulSKi Claimed/Argued The Trial Court Should have merged the weapons offense to Reduce the Number to two Counts one for each Assault Conviction, and as a result of the first and Second degree assaults being vacated/merged and because of the way this matter was Indicted the Superior Court lacked jurisdiction to sentence Samuel, on any of the Four weapons Counts.

Samuel, argued because the first and Second degree assaults was vacated or merged therefore there is NO underlying felony Count to SupPort the related Indicted weapon Count. The rule say any time there is a felony with a related weapon the felony must be served before the related weapon

Samuel, will not serve any time for the first nor the second degree assault. Therefore Samuel, can not be sentence on the related weapons because there is no underlying felony to support the weapons weapons.

Plaintiff Samuel, was convicted of two counts of assault in a Detention facility. However, Samuel, was not Indicted for either of the assault in a Detention facility with a weapon.

In 2006, Plaintiff Samuel, was represented by a different counsel Bernard O'Donnell. At which time Samuel, argued Priest v. State. Samuel, argued the Samuel, convictions for possession of a deadly weapon during the commission of a felony should be vacated because Samuel, claim the Supreme court of Delaware found Samuel, not guilty of the underlying offenses of first and second degree assault. Samuel, argue that the decision in Priest v. State requires those convictions possession of a deadly weapon during the commission of a felony to be vacated because the Supreme Court in Priest held that a Defendant must be convicted of a felony in order to be convicted of a possession of a Deadly weapon during the commission of a felony crime.

Plaintiff Samuel, now inaddition to the above Priest v. State argues that his counsel Bernard O'Donnell was ineffective because counsel did not consult with Samuel, about the matter that was talked about at the Supreme court oral arguement. further counsel never informed client Samuel, of the letter that the Supreme court of Delaware sent to counsel (Exhibit 8 ) asking question such as what impact the Indictment have on the claims presented. Samuel, only found out about the court letter/Question is after counsel sent in a response supplemental memorandum briefing that the appeal is moot. Exhibit 8 without finding out what Samuel, wishes was. Thereafter, the court sent counsel another letter stating the appeal will be under submittions as of November 8, 2006. Therefore Samuel ask counsel to send something to the court to rehiterate cousel

first response to the court letter and Arguments at the oral to send in to the court (submit) Samuel, answer/response to the letter/question what impact the Indictment have on the Claims Presented. Counsel did not submit anything that Samuel, ask Counsel as to the November 8th submissions. Samuel Claim the first and Second degree assaults was merge/vacate. Therefore, there is no underlying felony to support any of the weapons counts.

Samuel, also Claim and argues what impact the Indictment have on the Claims Presented, (As Samuel argued before that Due Process is violated 14th amend.). Samuel, argues that Samuel was not Indicted with a weapon for either of the two assault in a detention facility. Samuel, argues the Indictment was not amended to specify as to each count of possession of a deadly weapon during the commission of a felony as to which assault in a detention facility it accompanied. Common-law rule as to permissible amendments of an indictment Coincides with superior court criminal rule permitting information to be amended at any time before a verdict. Superior Court Criminal rule 7(e), Del. C. Ann. Both are designed to afford the accused two Protections: 1: notice of the Charges against him so that he has an opportunity to prepare an adequate defense and 2 Prevention from twice being placed in jeopardy for the same offense such as Samuel, was in the Indictment.

Samuel, argue Samuel, Serving weapon offense to assault in a detention facility offense that Samuel, was not Indicted on Prejudiced Samuel and Prejudiced Samuel, Substantial Constitutional Due Process 14th amendment rights.

Samuel Claim the Indictment did not afford Samuel notice of an assault in a detention facility with a related weapon, so that Samuel, Could of had an opportunity to prepare adequate defense. Samuel argue claim Samuel would have pursued a different Strategy if Samuel, was Indicted for assault in a detention facility with a related weapon. A different strategy to prove Samuel, actual Innocents as to the weapon counts.

III. Denied 6th amendment right to effective assistant of Counsel

## Arguement

Samuel argue the Counsel Bernard errored by not reading case and Sentence Transcripts Exhibit A 74, A75, A76 and Submit to the Court. Counsel did not imform Plaintiff of the matters argued at the Supreme court oral arguement. Counsel did not tell Plaintiff any thing about the Courts letter/Question asking what impact the Indictment have on the Claims Presented Exhibit Counsel did not Submit to the Court Plaintiff Subissions. Counsel did not a reargument in time to meet the time limitation. which Counsel deprived Plaintiff the right to defend himself. Counsel was ineffective as to ground one and ground Two, inaddition to ground three.

# Conclusion

Samuel, request that four of his Possession of a deadly weapon during the Commission of a felony be Vacated

Respectfully Submitted

Inmate
Harry L. Samuel
SBI. # 201360
Delaware Correctional Center

Date

SUPERIOR COURT
OF THE
STATE OF DELAWARE

PEGGY L. ABLEMAN
JUDGE

NEW CASTLE COUNTY COURTHOUSE
500 NORTH KING STREET, SUITE 10400
WILMINGTON, DELAWARE 19801-3733
TELEPHONE (302) 255-0660

March 29, 2006

Mr. Harry L. Samuel
SBI# 201360
Delaware Correctional Center
1181 Paddock Road
Smyrna, DE 19977

RE: State v. Harry L. Samuel
I.D. No. 93005924DI

Dear Mr. Samuel:

The Court is in receipt of your Motion for Postconviction Relief, filed pursuant to Superior Court Criminal Rule 61. Having reviewed your Motion and the record of your case, it plainly appears that your motion must be **DENIED.**

You argue that your convictions for Possession of a Deadly Weapon During the Commission of a Felony ("PDWDCF") should be vacated because you claim the Supreme Court of Delaware found you not guilty of the underlying offenses of Assault in a Detention Facility and Assault Second Degree. You argue that the decision in *Priest v. State*, 879 A.2d 575, 583 (Del. 2005), requires those convictions to be vacated because the Supreme Court in *Priest* held that a defendant must be convicted of a felony in order to be convicted of a PDWDCF crime.

Rule 61(i)(1) allows a motion for postconviction relief to be filed within one year after a newly discovered retroactively applicable right is recognized by the U.S. Supreme Court or the Delaware Supreme Court. Delaware courts will apply the constitutional standards applicable at the time of the original proceeding, unless the new rule falls within one of two exceptions: (1) if the rule places certain individual conduct under the protection of the U.S. Constitution, or (2) if the rule "requires the observance of those procedures that...are implicit under concepts of ordered liberty." *Flamer v. State*, 585 A.2d 736, 749 (Del. 1990).

Although the Delaware Supreme Court expressly overruled prior case law inconsistent with *Priest*'s holding, the Court did not even address the issue of retroactivity. *See Priest*, 879 A.2d at 584. Additionally, the Court expressly suggested how to frame jury instructions for *future* cases involving PDWDCF cases. *Id.* at 589. Thus, *Priest*'s holding will not apply retroactively unless it meets one of the two exceptions.

*Priest* does not meet the first exception because the Supreme Court merely reinterpreted a statute without addressing any type of conduct. Moreover, the new rule does not meet the second exception because the Court did not require the observance of any new procedures implicit in the concept of ordered liberty. Thus, you have no claim under *Priest* because you were found guilty and sentenced before *Priest* was decided. Accordingly, your motion is time-barred under Rule 61(i)(1), which provides that a motion for postconviction relief must be filed within one year after a judgment of conviction is final.

Furthermore, your motion is barred under Rule 61(i)(4) as formerly adjudicated. On appeal, the Supreme Court did not overturn your convictions for the lesser-included offenses of assault, as you claim. Rather, the Supreme Court only concluded that the two separate charges of Assault Second Degree and Assault in a Detention Facility should be merged. *Samuel v. State*, Del. Supr., No. 13, 1995, Berger, J. (Apr. 10, 1996). The Supreme Court reiterated this point in its opinion affirming your sentence when it explicitly stated that it would uphold the jury's factual determination that you committed the first and second degree assaults. *Samuel v. State*, Del. Supr., No. 252, 1995, Veasey, C.J. (Apr. 16, 1997) at 4. The Supreme Court has already ruled that you were properly convicted of PDWDCF and your claim is accordingly barred.

Mr. Harry L. Samuel
March 29, 2006
Page 3

For all the foregoing reasons, your Motion for Postconviction Relief is hereby **DENIED**.

**IT IS SO ORDERED.**

Yours very truly,

Peggy L. Ableman

Peggy L. Ableman

PLA:jmd
cc: Prothonotary

**H**
(The decision of the Court is referenced in the Atlantic Reporter in a 'Table of Decisions Without Published Opinions.')
Supreme Court of Delaware.
**Harry SAMUEL**, Defendant Below-Appellant,
v.
STATE of Delaware, Plaintiff Below-Appellee.
**No. 13, 1995.**

Submitted: Jan. 3, 1996.
Decided: April 10, 1996.
Rehearing Denied May 6, 1996.

Court Below: Superior Court of the State of Delaware in and for New Castle County; Cr.A. Nos. IN93-07-0482 through 0484, IN93-07-0938 through 0942, and P93-07-0482.
Superior Court, New Castle County

REVERSED IN PART AND REMANDED.

Before VEASEY, C.J., HOLLAND and BERGER, JJ.

*ORDER*

BERGER, Justice.
*1 This 10 day of April, 1996, upon consideration of the briefs and arguments of the parties, it appears to the Court that:

1) Harry Samuel ("Samuel") appeals from his convictions, following a jury trial, of assault first degree, assault second degree, two counts of assault in a detention facility, and four counts of possession of a deadly weapon during the commission of a felony. Samuel argues that the Superior Court erred in: (i) refusing to merge the assault first and second degree charges into the two charges of assault in a detention facility; (ii) refusing to merge the four weapons charges into two counts; and (iii) sentencing Samuel to 125 years in prison.

2) Samuel was confined to the Plummer Work Release Center ("Plummer") in June 1993, for failing to pay child support. On the morning of June 15, 1993, Samuel requested permission to leave Plummer to look for work. Alfred Cipolla ("Cipolla"), a job counselor employed at Plummer, gave Samuel a pass that required Samuel to return by 1:00 p.m. At approximately 11:45 a.m., Samuel called Cipolla and requested extra time. Cipolla felt that Samuel had not justified the request for additional time, so Cipolla denied the request. Approximately one hour later, Samuel barged into Cipolla's office at Plummer and began stabbing Cipolla in the face and neck with two large knives. Within a few moments, Jessie Waller ("Waller"), another Plummer employee, walked into the office where the attack was underway. Samuel turned toward Waller and slashed Waller's hand with one of the knives as Samuel fled the building. Samuel was apprehended and the two kitchen knives were recovered very shortly after the incident.

3) Samuel was charged with attempted first degree murder, assault in a detention facility and two counts of possession of a deadly weapon during the commission of a felony in connection with his attack on Cipolla. Samuel was charged with assault second degree, assault in a detention facility and two counts of possession of a deadly weapon during the commission of a felony in connection with his attack on Waller. The jury found Samuel not guilty of attempted murder, but convicted him on the lesser included offense of assault first degree. In addition, Samuel was convicted of all the other charges.

4) Samuel argues that his two assault convictions should be merged into the assault in a detention facility convictions. He points out that the assault in a detention facility offenses, as charged, include all of the same facts alleged in the remaining assault charges plus the additional fact that Samuel was a

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Exhibit 1

person confined in a detention facility. Thus, for example, in Count V of the indictment, Samuel is charged with assault second degree based upon the allegation that he intentionally caused physical injury to Jessie Waller by cutting him with a knife. Count VI, charging Samuel with assault in a detention facility, likewise alleges that Samuel caused physical injury to Jessie Waller by cutting him with a knife. The only difference between the two charges is that Count VI also alleges that Samuel was a person confined in the Delaware Correctional Center.

***2** 5) In deciding whether a single act that violates two statutory provisions constitutes one offense or two, this Court frequently applies the statutory elements test announced in *Blockberger v. United States,* 284 U.S. 299, 304, 52 S.Ct. 180, 182, 76 L.Ed. 306, 309 (1932). Under the *Blockberger* test, the elements of each offense are compared to determine whether one requires proof of a fact that the other does not. "[G]enerally ... multiple punishments are not imposed for two offenses arising out of the same occurrence unless each offense requires proof of a fact that the other does not." *LeCompte v. State,* Del.Supr., 516 A.2d 898, 900 (1986).

6) Even if there is some dissimilarity between the statutory elements of two offenses, one may be a lesser included offense of the other "under appropriate factual circumstances." *Lilly v. State,* Del.Supr., 649 A.2d 1055, 1061 (1994). *See Delaware Criminal Code with Commentary,* 16 (1973). Here, although the statutory elements of the relevant assault offenses are different, the indictment charges Samuel with separate assault and assault in a detention facility offenses based upon all of the same facts. Under these circumstances, we conclude that the Superior Court erred in failing to merge the two sets of assault charges. There is nothing in the statutory language to suggest that the General Assembly intended to impose multiple punishments for a single act that constitutes both assault and assault in a detention facility. *Cf. State v. Cook,* Del.Supr., 600 A.2d 352 (1991) (unambiguous statutory language permitted cumulative prosecution and punishment for vehicular assault first degree and driving under the influence).

7) Samuel argues that the weapons charges, also, should have been merged. He contends that 11 *Del.C.* § 1447 does not reflect a legislative policy to impose multiple punishments where, as here, two weapons of the same type are used simultaneously during the commission of an offense.

8) We find this argument to be without merit. In *Pauls v. State,* Del.Supr., No. 377, 1987, Christie, C.J. (January 12, 1989) (ORDER), the Court held that:

The defendant's conviction for two counts of possession of a deadly weapon during the commission of a felony, one count for each weapon he possessed during each felony, is supported by the language of the statute. Moreover, the purpose of the statute, to deter possession of a deadly weapon during the commission of a felony, is based on the reasoning that accessibility to a weapon increases the risk of harm to a victim. Therefore, logic dictates that the more weapons a criminal has at his disposal during the commission of a felony, the greater the likelihood that the felony will result in violence against a victim. Separate convictions for each weapon in the defendant's possession is thus consistent with the deterrence goal of the statute. *Id.* at 3.

The rationale of the *Pauls* holding applies with equal force to Samuel's multiple convictions based upon his use and possession of multiple weapons.

***3** 9) Finally, Samuel argues that the Superior Court abused its discretion in imposing a total sentence of 125 years of incarceration. Generally, sentences within statutory limits are not reviewable. *Mayes v. State,* Del.Supr., 604 A.2d 839, 842 (1992). However, it is a violation of due process if the sentencing judge has a closed mind or relies on impermissible factors. *Luboy v. State,* Del.Supr., No. 210, 1994, Veasey, C.J. (June 23, 1995) (ORDER).

10) Samuel points out that the jury found him not guilty of attempted murder. Nonetheless, the Superior Court made its own contrary determination. The Superior Court stated, "Had it

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

not been for the intervention of Officer Jessie Waller, who you also attacked, Mr. Cipolla would be the victim of murder." Appellant's Appendix, A-65. We find this statement, coupled with the length of the sentence imposed, to be clear evidence that the trial court imposed the sentence, at least in part, on the basis of impermissible factors. Accordingly, Samuel must be resentenced, preferably by a different judge.

NOW, THEREFORE, IT IS ORDERED that the judgment of the Superior Court is REVERSED IN PART and this matter is REMANDED to the Superior Court for resentencing in accordance with this decision.

Del.,1996.
Samuel v. State
676 A.2d 906, 1996 WL 191068 (Del.Supr.)

END OF DOCUMENT

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

**H**
(The decision of the Court is referenced in the Atlantic Reporter in a 'Table of Decisions Without Published Opinions.')

Supreme Court of Delaware.
**HARRY L. SAMUEL**, Defendant Below, Appellant,
v.
STATE OF DELAWARE, Plaintiff Below, Appellee.
**No. 252, 1996.**

Submitted: March 18, 1997
Decided: April 16, 1997.

Before VEASEY, Chief Justice, HARTNETT and BERGER, Justices.

*ORDER*

*1 This 16th day of April 1997, upon consideration of the briefs of the parties, it appears to the Court that:

1. Appellant, Harry L. Samuel, appeals the sentence imposed by the Superior Court after this Court's remand for resentencing. The appeal is without merit.

2. After a jury trial Samuel was convicted of assault first degree, assault second degree, two counts of assault in a detention facility, and four counts of possession of a deadly weapon during the commission of a felony. He was sentenced to a total of 125 years. Samuel appealed and this Court determined that two of his convictions for assault should be merged into two convictions of assault in a detention facility convictions. We also found that in imposing sentence the trial court, at least in part, relied on impermissible factors. *Samuel v. State*, Del.Supr., No. 13, 1996, Berger, J. (April 10, 1996) (ORDER). The judgment of the trial court was, therefore, reversed in part and the matter remanded for a resentencing.

3. Resentencing was held before a different judge. Samuel received a total of 98 years incarceration which included: a 20 year term for one assault in a detention facility conviction, an 8 year term for the other assault in a detention facility conviction, two 20 year terms for two weapons convictions, and two 15 year terms for the remaining two weapons convictions.

4. Samuel now complains that the Superior Court erred when it denied a defense request for continuance of the resentencing hearing. The continuance was requested to give the defense an opportunity to obtain a psychological evaluation to determine whether any mitigating factors such as mental impairment existed which could be submitted by Samuel at the resentencing. We find that the Superior Court did not abuse its discretion when it denied Samuel's request for a continuance. Samuel presented no evidence that he suffered from any mental impairment and failed to show that a continuance would have resulted in any testimony to that effect. Samuel did not show diligence in preparing for the resentencing and no evidence was offered as to why, in the seven weeks prior to the resentencing, no new psychiatric evaluation had been performed. Finally, Samuel failed to show that the inconvenience of a continuance would be insubstantial in relation to the likely prejudice that would result from the denial of the continuance. *Secrest v. State*, Del.Supr., 679 A.2d 58, 66 (1996).

5. Samuel also argues that the sentence imposed at the resentencing was excessive and that the judge imposed it with a closed mind or relied on impermissible factors. We also find this argument to be without merit. The sentence imposed was within the statutory limits. The sentencing judge articulated the facts he relied on which included multiple deadly weapons, multiple victims, excessive cruelty, the unprovoked nature of the attack, and that Samuel was already being held at a

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Exhibit 2

Level IV custody status. *State v. Samuel,* P93-07-0482, Toliver, J. (May 31, 1996) (Sentencing Proceeding). The record contains no evidence that the sentencing judge relied on impermissible factors or ruled with a closed mind. The sentencing judge specifically determined not to consider lack of remorse as an aggravating factor and did not consider Samuel to be completely non-amenable. *Id.* In reviewing a sentence within the statutory guidelines, this Court will not find error unless it is clear that the sentencing judge relied on impermissible factors or exhibited a closed mind. *Laboy v. State,* Del.Supr., 663 A.2d 487 (1995); *Mayes v. State,* Del.Supr., 604 A.2d 839, 843 (1992).

***2** 6. Finally, Samuel argues that the sentences imposed for the four weapons convictions are improper because the underlying offenses, the first and second degree assault convictions, were merged into the two assault in a detention facility convictions, effectively eliminating the underlying felonies supporting the weapons convictions. We find this argument also without merit. The April 10, 1996 Remand Order of this Court determined that the separate convictions and sentences for the first and second degree assault charges were improper and merged these charges into the two assault in a detention facility charges in order to satisfy the Constitutional double jeopardy prohibitions. We did not eliminate, however, the jury's factual determination that Samuel committed the first and second degree assaults. The jury found the existence of all the necessary elements to convict Samuel of the underlying assault charges and the four weapons charges. Due process is therefore not offended by the sentencing of Samuel for the four weapons charges.

NOW, THEREFORE, IT IS ORDERED that the judgments of the Superior Court be, and the same hereby are,

AFFIRMED.

Before VEASEY, Chief Justice, HOLLAND and BERGER, Justices.

*ORDER*

This 10 day of April, 1996, upon consideration of the briefs and arguments of the parties, it appears to the Court that:

1) Harry Samuel ("Samuel") appeals from his convictions, following a jury trial, of assault first degree, assault second degree, two counts of assault in a detention facility, and four counts of possession of a deadly weapon during the commission of a felony. Samuel argues that the Superior Court erred in: (i) refusing to merge the assault first and second degree charges into the two charges of assault in a detention facility; (ii) refusing to merge the four weapons charges into two counts; and (iii) sentencing Samuel to 125 years in prison.

2) Samuel was confined to the Plummer Work Release Center ("Plummer") in June 1993, for failing to pay child support. On the morning of June 15, 1993, Samuel requested permission to leave Plummer to look for work. Alfred Cipolla (" Cipolla"), a job counselor employed at Plummer, gave Samuel a pass that required Samuel to return by 1:00 p.m. At approximately 11:45 a.m., Samuel called Cipolla and requested extra time. Cipolla felt that Samuel had not justified the request for additional time, so Cipolla denied the request. Approximately one hour later, Samuel barged into Cipolla's office at Plummer and began stabbing Cipolla in the face and neck with two large knives. Within a few moments, Jessie Waller ("Waller"), another Plummer employee, walked into the office where the attack was underway. Samuel turned toward Waller and slashed Waller's hand with one of the knives as Samuel fled the building. Samuel was apprehended and the two kitchen knives were recovered very shortly after the incident.

3) Samuel was charged with attempted first degree murder, assault in a detention facility and two counts of possession of a deadly weapon during the commission of a felony in connection with his attack on Cipolla. Samuel was charged with assault second degree, assault in a detention facility and two counts of possession of a deadly weapon during the commission of a felony in connection with his attack on Waller. The jury found Samuel

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

not guilty of attempted murder, but convicted him on the lesser included offense of assault first degree. In addition, Samuel was convicted of all the other charges.

***3** 4) Samuel argues that his two assault convictions should be merged into the assault in a detention facility convictions. He points out that the assault in a detention facility offenses, as charged, include all of the same facts alleged in the remaining assault charges plus the additional fact that Samuel was a person confined in a detention facility. Thus, for example, in Count V of the indictment, Samuel is charged with assault second degree based upon the allegation that he intentionally caused physical injury to Jessie Waller by cutting him with a knife. Count VI, charging Samuel with assault in a detention facility, likewise alleges that Samuel caused physical injury to Jessie Waller by cutting him with a knife. The only difference between the two charges is that Count VI also alleges that Samuel was a person confined in the Delaware Correctional Center.

5) In deciding whether a single act that violates two statutory provisions constitutes one offense or two, this Court frequently applies the statutory elements test announced in *Blockberger v. United States,* 284 U.S. 299, 304, 52 S.Ct. 180, 182, 76 L.Ed. 306, 309 (1932). Under the *Blockberger* test, the elements of each offense are compared to determine whether one requires proof of a fact that the other does not. "[G]enerally ... multiple punishments are not imposed for two offenses arising out of the same occurrence unless each offense requires proof of a fact that the other does not." *LeCompte v. State,* Del.Supr., 516 A.2d 898, 900 (1986).

6) Even if there is some dissimilarity between the statutory elements of two offenses, one may be a lesser included offense of the other "under appropriate factual circumstances." *Lilly v. State,* Del.Supr., 649 A.2d 1055, 1061 (1994). *See Delaware Criminal Code with Commentary,* 16 (1973). Here, although the statutory elements of the relevant assault offenses are different, the indictment charges Samuel with separate assault and assault in a detention facility offenses based upon all of the same facts. Under these circumstances, we conclude that the Superior Court erred in failing to merge the two sets of assault charges. There is nothing in the statutory language to suggest that the General Assembly intended to impose multiple punishments for a single act that constitutes both assault and assault in a detention facility. *Cf. State v. Cook,* Del.Supr., 600 A.2d 352 (1991) (unambiguous statutory language permitted cumulative prosecution and punishment for vehicular assault first degree and driving under the influence).

7) Samuel argues that the weapons charges, also, should have been merged. He contends that *11 Del.C.* § 1447 does not reflect a legislative policy to impose multiple punishments where, as here, two weapons of the same type are used simultaneously during the commission of an offense.

8) We find this argument to be without merit. In *Pauls v. State,* Del.Supr., No. 377, 1987, Christie, C.J. (January 12, 1989) (ORDER), the Court held that:

***4** The defendant's conviction for two counts of possession of a deadly weapon during the commission of a felony, one count for each weapon he possessed during each felony, is supported by the language of the statute. Moreover, the purpose of the statute, to deter possession of a deadly weapon during the commission of a felony is based on the reasoning that accessibility to a weapon increases the risk of harm to a victim. Therefore, logic dictates that the more weapons a criminal has at his disposal during the commission of a felony, the greater the likelihood that the felony will result in violence against a victim. Separate convictions for each weapon in the defendant's possession is thus consistent with the deterrence goal of the statute. *Id.* at 3.

The rationale of the *Pauls* holding applies with equal force to Samuel's multiple convictions based upon his use and possession of multiple weapons.

9) Finally, Samuel argues that the Superior Court abused its discretion in imposing a total sentence of 125 years of incarceration. Generally, sentences within statutory limits are not reviewable. *Mayes v. State,* Del.Supr., 604 A.2d 839, 842 (1992).

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

However, it is a violation of due process if the sentencing judge has a closed mind or relies on impermissible factors. *Laboy v. State*, Del.Supr., No. 210, 1994, Veasey, C.J. (June 23, 1995) (ORDER).

10) Samuel points out that the jury found him not guilty of attempted murder. Nonetheless, the Superior Court made its own contrary determination. The Superior Court stated, "Had it not been for the intervention of Officer Jessie Waller, who you also attacked, Mr. Cipolla would be the victim of murder." Appellant's Appendix, A-65. We find this statement, coupled with the length of the sentence imposed, to be clear evidence that the trial court imposed the sentence, at least in part, on the basis of impermissible factors. Accordingly, Samuel must be resentenced, preferably by a different judge.

NOW, THEREFORE, IT IS ORDERED that the judgment of the Superior Court is REVERSED IN PART and this matter is REMANDED to the Superior Court for resentencing in accordance with this decision.

Del.Supr.,1997.
Samuel v. State
694 A.2d 48, 1997 WL 317362 (Del.Supr.)

END OF DOCUMENT

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Page 2 of 15

Westlaw.

Not Reported in A.2d Page 1

Not Reported in A.2d, 2004 WL 396407 (Del.Super.)
**(Cite as: Not Reported in A.2d)**

**H**
Only the Westlaw citation is currently available.
UNPUBLISHED OPINION. CHECK COURT RULES BEFORE CITING.

Superior Court of Delaware.
STATE of Delaware
v.
Mark Anthony KIRK, Defendant.
Submitted Nov. 15, 2003.
Decided Feb. 26, 2004.

Upon Defendant's Motion for Postconviction Relief. Granted.

Mark Anthony Kirk, Wilmington, Delaware, Defendant, pro se.
James B. Ropp, Donald R. Roberts, Deputy Attorneys General, New Castle County, State of Delaware, for the State of Delaware.

ORDER

ABLEMAN, J.

*1 Mark Anthony Kirk ("Defendant") has filed this *pro se* Motion for Postconviction Relief pursuant to Superior Court Criminal Procedure Rule 61, wherein he seeks to set aside a judgment of criminal conviction based on a violation of his constitutional right to due process under the United States Constitution and under the Delaware Constitution. In his motion, Defendant draws upon the " fundamental fairness" doctrine, based on a " colorable claim" that there was a miscarriage of justice, as the single ground for postconviction relief. For the reasons stated below, Defendant's Motion is GRANTED.

*Statement of Facts*

The series of tragic events that lead up to the death of three innocent individuals began on the night of December 3, 1996 when Defendant, and his girlfriend, Darlene Hamby, both heavily intoxicated, returned to Darlene's apartment. Defendant, Darlene, and several friends, had spent that day drinking heavily, and Darlene was observed flirting openly with other men in the group. After returning to Darlene's apartment later that night, Defendant and Darlene began to argue vehemently about the day's events. Darlene's two sons, ages ten and sixteen, were in their bedrooms. At the height of the argument, Defendant decided that he was finished with their turbulent relationship, told Darlene that he was leaving her, and began to pack his belongings.

According to the evidence produced at trial, Defendant was so enraged and so inebriated, that he released his anger and frustration on one of his few valued possessions, a grandfather clock, which he then destroyed. Unfortunately, this fit of rage was not sufficient to allay the Defendant's ire. After grabbing a partially full bottle of Captain Morgan's Spiced Rum, he proceeded to the kitchen, turned on the right front burner of the stove to its highest position, and emptied the bottle onto the burner when it was on high. Defendant's eyebrows were singed and he sustained partial burns to his face as the alcohol burst into flames. While the fire began to spread to the pressed board cabinets above the stove, the Defendant remained undaunted. He made no effort to extinguish the fire, or to warn Darlene and her children that the kitchen was ablaze. Rather, he moved away from the kitchen and continued packing his clothes.

Within minutes, the smoke alarm activated, and Darlene and her older son became aware of the fire consuming their apartment. Chaos and pandemonium spread as the occupants of the apartment realized what was occurring. Due to the intoxicated conditions of both the Defendant and Darlene at this time, the testimonial evidence regarding the next several minutes is sketchy. It was later conclusively shown at trial that Darlene exited the apartment, while her older son grabbed her younger son and made an escape as well. The

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Exhibit 3

Page 3 of 15

Not Reported in A.2d

Page 2

Not Reported in A.2d, 2004 WL 396407 (Del.Super.)
**(Cite as: Not Reported in A.2d)**

Defendant also escaped unscathed. Unfortunately, other tenants asleep in the building were not so fortunate. Steven Rivera, and his two children, Frances and Robert Rivera, who resided in the apartment above Darlene's apartment, suffocated to death in the smoke caused by the fire. Additionally, several other residents, including Jeremy Rivera, Janice Gray, and Emily Miller, suffered extensive injuries as they jumped for their lives from the upper stories of the building.

***2** Although the Defendant initially denied having started the fire, he eventually admitted to the police in recorded statements that he intentionally poured the accelerant containing alcohol on the hot burner for the purpose of starting a fire. At trial, his statements to the police were introduced against him. Additionally, evidence of the flammability factor of Captain Morgan's Spiced Rum and the pooling effect under the burner, which caused the vaporization and consequent ignition of the ethanol in the rum, were also admitted into evidence for the Court's consideration.

On October 23, 1997, after hearing all the evidence presented following a non-jury trial, the Court found, beyond a reasonable doubt, that the Defendant intentionally started the fire that ultimately caused the deaths of a father and his two children. The Defendant was convicted of three counts of Felony Murder in the First Degree, in violation of Title 11, § 636(a)(2) of the Delaware Code, one count of the lesser included offense of Arson in the Third Degree, in violation of Title 11, § 801 of the Delaware Code, two counts of Assault First Degree, in violation of Title 11, § 613(a)(4) of the Delaware Code, and one count of the lesser included offense of Assault Third Degree, in violation of Title 11, § 611 of the Delaware Code.

Upon conviction, the State sought the death penalty. By a preponderance of the evidence, the Court found that the existing mitigating circumstances outweighed the existing aggravating circumstances. The Court sentenced the Defendant on December 3, 1997 to three mandatory consecutive life sentences in connection with the First Degree Felony Murder convictions, to ten years incarceration at Level V for each of the Assault First Degree convictions, to two years incarceration at Level V on the Arson Third Degree conviction, and to one year incarceration at Level V on the Assault Third Degree conviction.

Defendant timely filed a direct appeal of his conviction to the Delaware Supreme Court. Defendant's conviction was affirmed on April 29, 1999.[FN1] Shortly thereafter, Defendant filed a Rule 61 motion for postconviction relief. [FN2] On May 23, 2000, the Court denied Defendant's motion. [FN3] The Delaware Supreme Court affirmed this Court's ruling on October 16, 2000. [FN4]

FN1. *Kirk v. State,* 1999 WL 415802 (Del.)

FN2. In his motion, Defendant alleged ineffective assistance of counsel, falsified evidence, and unconstitutional admission into evidence the statements that he had made to the police.

FN3. *State v. Kirk,* 2000 WL 1211214 (Del.Super.Ct.). Defendant's motion was denied on the grounds that his claims of ineffective assistance of counsel and falsified evidence had no basis in law or fact, and that his claim of an illegal obtained confession statement and detention by the police was procedurally barred pursuant to Rule 61(i)(4).

FN4. *Kirk v. State,* 2000 WL 1637418 (Del.).

In 2001, Defendant filed a second Rule 61 motion for postconviction relief. [FN5] On June 25, 2001, the Court denied Defendant's motion for postconviction relief because his claims were barred by Rule 61(i)(2) and (5). [FN6] On December 13, 2001, Defendant filed a notice of appeal from the Court's June 25 Order. The Delaware Supreme Court affirmed this Court's denial of Defendant's second Rule 61 motion for postconviction relief on February 12, 2002.[FN7]

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

FN5. Defendant raised two grounds for relief. Relying on a claim of violation of his due process rights, Defendant averred that "no rational trier of fact could have found the essential element[s] of arson beyond a reasonable doubt." Second, he alleged violations of his Fifth, Sixth and Fourteenth Amendment rights. Specifically, he argued that the indictment charging him with Arson First Degree did not correctly state the elements of the crime, and that a charge of Arson First Degree cannot support a conviction of Arson Third Degree (as a lesser included offense).

FN6. *State v. Kirk,* 2001 WL 755942 (Del.Super.Ct.).

FN7. *Kirk v. State,* 2002 WL 256741 (Del.)
.

Finally, having exhausted Delaware state-court appeals and postconviction remedies, Defendant filed a petition for writ of habeas corpus in the United States District Court for the District of Delaware on May 7, 2002. Defendant's petition was denied on January 30, 2003.[FN8] Defendant filed a notice of appeal on March 1, 2003 and a Motion for Certificate of Appealability on March 19, 2003 with the United States Court of Appeals for the Third Circuit. Defendant's motion for certificate of appealability was denied on July 21, 2003.

FN8. *Kirk v. Carroll,* 243 F.Supp.2d 125 (D.Del.2003). The District Court held that: (1) petitioner did not make clear and unambiguous requests to police officers to cease the interview; (2) petitioner's confession that he poured rum on the burner which started the fire in the apartment building was voluntary under totality of the circumstances; (3) petitioner's claim that trial counsel rendered ineffective assistance of counsel was deemed exhausted; (4) petitioner's claim that trial counsel rendered ineffective assistance was procedurally defaulted; (5) trial counsel's refusal to move for recusal of trial judge did not constitute ineffective assistance; (6) conviction was supported by evidence; (7) petitioner had no constitutional right to counsel in habeas proceedings; and (8) petitioner was not entitled to a certificate of appealability.

*3 While Defendant's appeal to the United States Court of Appeals for the Third Circuit was still pending, he filed his third motion for postconviction relief in the Superior Court on April 9, 2003. Defendant's Rule 61 motion alleged that some of his convictions should be vacated based on recent case law. The Court issued an Order, dated June 25, 2003, requesting that the Department of Justice file a legal memorandum in response to Defendant's motion, taking into account the factual assertions in Defendant's motion, pursuant to Rule 61(f)(1). The Court also ordered the Defendant to reply to the State's response pursuant to Rule 61(f)(3).[FN9]

FN9. In a letter, dated September 11, 2003, from the Court to Defendant, the Court advised Defendant that the State had requested, and that the Court had granted, an extension of time for the State to file its response due to the fact that the Deputy Attorney General was involved in a five-week First Degree Murder trial. The State's response date was extended until September 15, 2003. On September 30, 2003, Defendant filed a Motion for Extension of Time requesting an extension of time in which to respond to the State's response, asserting that his Rule 61 claim involves complex issues that require proper development, and to enable him to obtain copies of certain case law, cited in the State's response, through the prison law library system. By Order, dated October 7, 2003, the Court granted Defendant's motion for extension of time, extending his reply date until November 15, 2003.

*Defendant's Contentions*

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Page 5 of 15

Not Reported in A.2d Page 4
Not Reported in A.2d, 2004 WL 396407 (Del.Super.)
**(Cite as: Not Reported in A.2d)**

Defendant filed the instant motion for postconviction relief on April 9, 2003, wherein he states a single ground for relief based on the recent Delaware Supreme Court decision in *Williams v. State,* which redefined the phrase "in furtherance of" as interpreted in the State's felony First Degree Murder statute, 11 *Del. C.* § 636(a)(2).[FN10] Specifically, invoking the "fundamental fairness" exception incorporated in Rule 61(i)(5), Defendant seeks to have his three felony Murder First Degree convictions, and his two Assault First Degree convictions vacated, based on the newly defined interpretation of the "in furtherance of" language set forth in *Williams.*[FN11] Pursuant to *Williams,* felony murder cannot attach unless the murder is a consequence of the felony and is intended to help the felony progress.[FN12] As the Court will further explain, even though this motion was filed more than three years after the judgment of conviction was finalized,[FN13] Defendant has succeeded in demonstrating the existence of a newly recognized right within the purview of the "fundamental fairness " doctrine indigenous to Rule 61(i)(5), [FN14] such that his motion must be granted on substantive grounds. Finally, in his reply to the State's response, Defendant further requests that the Court, in addition to vacating his three felony Murder First Degree convictions and his two Assault First Degree convictions, "enter judgments of acquittal, or in the alternative, grant the defendant a new trial."

FN10. *Williams v. State,* 818 A.2d 906 (Del.2003).

FN11. Defendant's Memorandum in Support of Motion for Rule 61 Postconviction Relief, at 4-7 (hereinafter " Def. Mot. at ___.").

FN12. *Williams,* 818 A.2d at 912.

FN13. Super. Ct.Crim. R. 61(i)(1).

FN14. Super. Ct.Crim. R. 61(i)(5).

*State's Contentions*

In its response brief, the State concedes that, based on the holding in *Williams,* the Court must now vacate the guilty verdicts related to the three counts of Murder in the First Degree and the two counts of Assault in the First Degree. The State, in applying the meaning of "in furtherance of" as redefined by the Delaware Supreme Court in *Williams,* acknowledges that pursuant to the "fundamental fairness" exception, the Defendant has a "colorable claim" and, therefore, "the bars to postconviction relief fall."

It is the State's further contention that, after Defendant's convictions are vacated, the Court modify Defendant's judgment and convict Defendant of the lesser included offenses of three counts of Manslaughter, pursuant to 11 *Del. C.* § 632, and two counts of Assault in the Second Degree, pursuant to 11 *Del. C.* § 612. The State bases its contention that the Defendant is guilty of these lesser-included offenses because the trial court has already found that the Defendant acted recklessly and that deaths and/or injuries have occurred. The State substantiates that, "[t]he *Williams'* interpretation of the law holds that, at trial, the State did not prove the necessary element of 'in the course of and furtherance of' in order to sustain the offenses for which Kirk was found guilty. "

*4 Accordingly, the State requests that, at the hearing to vacate the convictions, the Court modify them to Manslaughter and Assault in the Second Degree, and that the Court re-sentence the Defendant as follows:

© 2006 Thomson West. No Claim to Orig. U.S. Govt. Works.

Page 6 of 15

Not Reported in A.2d Page 5

Not Reported in A.2d, 2004 WL 396407 (Del.Super.)
**(Cite as: Not Reported in A.2d)**

| | | | |
|---|---|---|---|
| IN96-12-0754 | Manslaughter | Steven Rivera | 10 years, Level V |
| IN96-12-0755 | Manslaughter | Frances Rivera | 10 years, Level V |
| IN97-01-1773 | Manslaughter | Robert Rivera | 10 years, Level V |
| IN97-01-1774 | Assault Second Degree | Jeremy Rivera | 8 years, Level V |
| IN97-01-1776 | Assault Second Degree | Emily Miller | 6 years, Level V, followed by 2 years of probation |

FN17. Super. Ct.Crim. R. 61(i)(1).

*Applicable Procedural Bars*

Under Delaware law, when considering a motion for postconviction relief, this Court must first determine whether the defendant has met the procedural requirements of Superior Court Criminal Rule 61(i) before it may consider the merits of defendant's postconviction relief claim.[FN15] To protect the integrity of the procedural rules, the Court should not consider the merits of a postconviction claim where a procedural bar exists.[FN16]

FN15. *Bailey v. State,* 588 A.2d 1121, 1127 (Del.1991); *Younger v. State,* 580 A.2d 552, 554 (Del.1990) (citing *Harris v. Reed,* 489 U.S. 255, 265 (1989)).

FN16. *State v. Gattis,* 1995 WL 790961, at *3 (citing *Younger,* 580 A.2d at 554).

Pursuant to Rule 61(i)(1), a postconviction motion that is filed more than three years after judgment of conviction is untimely, and thus procedurally barred. The time bar of Super. Ct.Crim. R. 61(i)(1) more fully provides:

A motion for postconviction relief may not be filed more than three years after the judgment of conviction is final or, if it asserts a retroactively applicable right that is newly recognized after the judgment of conviction is final, more than three years after the right is first recognized by the Supreme Court of Delaware or by the United States Supreme Court.[FN17]

The Rule 61 time bar is not an *absolute* prohibition to post-conviction relief petitions filed three years after conviction.[FN18] Rule 61(i)(5) may potentially overcome the procedural bars of Rule 61. Rule 61(i)(5) "[i]s a general default provision, and permits a petitioner to seek relief if he or she was otherwise procedurally barred under Rules 61(i)(1)-(3)." [FN19] Rule 61(i)(5) provides:

FN18. *Bailey,* 588 A.2d at 1125 (citing *Boyer v. State,* 562 A .2d 1186, 1188 (Del.1989)).

FN19. *Bailey,* 588 A.2d at 1129.

The bars to relief in paragraphs (1), (2), and (3) of this subdivision shall not apply to a claim that the court lacked jurisdiction or to a colorable claim that there was a miscarriage of justice because of a constitutional violation that undermined the fundamental legality, reliability, integrity or fairness of the proceedings leading to the judgment of conviction.[FN20]

FN20. Super. Ct.Crim. R. 61(i)(5).

The "miscarriage of justice" or "fundamental fairness" exception contained in Rule 61(i)(5) is "[a] *narrow one* and has been *applied only in limited circumstances,* such as when the right relied upon has been recognized for the first time after a direct appeal." [FN21] This exception may also apply to a claim that there has been a mistaken waiver of

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Page 7 of 15

Not Reported in A.2d Page 6

Not Reported in A.2d, 2004 WL 396407 (Del.Super.)
**(Cite as: Not Reported in A.2d)**

fundamental constitutional rights, such as a mistaken waiver of rights to trial, counsel, confrontation, the opportunity to present evidence, protection from self-incrimination and appeal.[FN22] Accordingly, when a petitioner puts forth a colorable claim of mistaken waiver of important constitutional rights, Rule 61(i)(5) is available to him.[FN23]

FN21. *Younger,* 580 A.2d at 555 (citing *Teague v. Lane,* 489 U . S. 288, 297-99 (1989))(emphasis added).

FN22. *Webster v. State,* 604 A.2d 1364, 1366 (Del.1992).

FN23. *Id.* (citing comparatively *Younger v. State,* 580 A.2d 552, 555 (Del.1990)) (fundamental fairness exception of Rule 61(i)(5) applies where petitioner shows he was deprived of a substantial constitutional right).

***5** If a movant presents a genuine "colorable claim," it will be sufficient to avoid dismissal of the claim and will require the Court to examine the evidentiary issues. It is worth noting, however, that once a movant makes a showing that he is entitled to relief, thereby avoiding summary dismissal of his motion,[FN24] an evidentiary hearing is not necessarily required. [FN25] The Court may instead elect to examine the evidentiary issues presented in the submissions of the party and in the record without a hearing. Also, whether the movant has presented a "colorable claim" may be determined on the basis of the postconviction motion itself, prior to any responses being filed.

FN24. Super. Ct.Crim. R. 61(d)(4) states:
Summary dismissal. If it plainly appears from the motion for postconviction relief and the record of prior proceedings in the case that the movant is not entitled to relief, the judge may enter an order for its summary dismissal and cause the movant to be notified.

FN25. Super. Ct.Crim. R. 61(h) states in part:
*Evidentiary hearing.* (1) Determination by court. After considering the motion for postconviction relief, the state's response, the movant's reply, if any, the record of prior proceedings in the case, and any added materials, the judge shall determine whether an evidentiary hearing is desirable ... (3) Summary Disposition. If it appears that an evidentiary hearing is not desirable, the judge shall make such disposition of the motion as justice dictates.

Moreover, "[i]n a postconviction proceeding, *the petitioner has the burden of proof* and must show that he has been deprived of a substantial constitutional right before he is entitled to any relief. " [FN26] In other words, "[t]he petitioner bears the burden of establishing a 'colorable claim' of injustice, (citation omitted). While 'colorable claim' does not necessarily require a conclusive showing of trial error, mere 'speculation' that a different result might have [sic] obtained certainly does not satisfy the requirement ." [FN27] Finally, the question of whether a movant has presented a " colorable claim" is a question of law that is reviewed by the Delaware Supreme Court *de novo.* [FN28]

FN26. *Bailey,* 588 A.2d at 1130 (citing *Younger v. State,* 580 A.2d 552, 555 (Del.1990)) (emphasis added).

FN27. *State v. Getz,* 1994 WL 465543, at *11 (Del.Super.Ct.).

FN28. *Webster,* 604 A.2d at 1366.

*Discussion*

Upon initial review of Defendant's motion for postconviction relief, the Court finds that Defendant has failed to overcome the first of two applicable hurdles of the procedural bars imposed by Rule 61(i), i.e., the time limitation bar to relief set forth in Rule 61(i)(1). Since Defendant filed the instant motion approximately four years after the judgment

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Page 8 of 15

Not Reported in A.2d

Page 7

Not Reported in A.2d, 2004 WL 396407 (Del.Super.)
**(Cite as: Not Reported in A.2d)**

of conviction became final on April 29, 1999,[FN29] and Defendant does not assert a new retroactive rule under any circumstance, his motion is procedurally barred under Rule 61(i)(1).

FN29. Within the purview of Rule 61(i)(1), a conviction becomes final for purposes of postconviction review:
(a) for a defendant who takes a direct appeal of the conviction, when the direct appeal process is complete (the date of the issuance of the mandate under Supreme Court Rule 19); or
(b) for a defendant who does not take a direct appeal, when the time for direct appeal has expired (30 days after sentencing); or
(c) if the United States Supreme Court grants certiorari to a defendant from a decision of this Court, when that Court's mandate issues. *Jackson v. State,* 654 A.2d 829, 833 (Del.1995).

Since the Defendant is procedurally barred under Rule 61(i)(1), his only alternative means of relief is to proceed under Rule 61(i)(5). Defendant has made no claim that the court lacked jurisdiction. He therefore has the burden of presenting a "colorable claim" that there was a miscarriage of justice because of a constitutional violation that undermined the fundamental legality, reliability, integrity or fairness of the proceedings leading to the judgment of conviction.

The foundation for Defendant's "colorable claim" for postconviction relief originates from the Delaware Supreme Court's recent revisionary interpretation applied to the "in the course of" and " in furtherance of" text of 11 *Del. C.* § 636(a)(2) as delineated in *Williams.* Overturning longstanding and well-settled case law, the Court in *Williams,* sitting *en banc,* overruled *Chao,* [FN30] and its progeny, with respect to the meaning of the "in furtherance of" language of the statute.[FN31] Some twelve years earlier in *Chao,* the Delaware Supreme Court had held that, in order "[f]or felony murder liability to attach, a killing need only accompany the commission of an underlying felony. Thus, if the 'in furtherance' language has any limiting effect, it is solely to require that the killing be done by the felon, him or himself." [FN32] The *Chao* Court cited *Weick* [FN33] for support, without overruling that portion of *Weick* requiring that death be a consequence of the felony and not a coincidence of it.

FN30. *See Chao v. State,* 604 A.2d 1351 (Del.1992).

FN31. *Williams,* 818 A.2d at 913.

FN32. *Williams,* 818 A.2d at 911 (quoting *Chao,* 604 A.2d at 1363).

FN33. *Weick v. State,* 420 A.2d 159 (Del.1980). In *Weick,* the Court emphasized the limitations placed on the scope of the felony murder rule, including the restriction that there be a causal connection between the felony and the murder. *Weick,* 420 A.2d at 162. An additional restriction was that the felon, or his accomplices, if any, performs an actual killing. *Id.* Accordingly, the fact of a causal connection and the fact of the identity of the performer were two separate restrictions. The defendant in *Chao* was arguing a restriction based on the former. Although the Court denied the defendant in *Chao* use of this restriction because she was the actual killer, the *Chao* Court did not expressly overturn the causal connection limitation mentioned in *Weick.*

***6** In consideration of its prior holdings in *Chao* and *Weick,* the Court in *Williams* addressed the remaining question of "whether the felony murder rule still includes a restriction that there be a causal connection between the felony and the murder in that the murder must be not only "in the course of" but also "in furtherance of" the felony." [FN34] Adopting the rules of statutory analysis set forth in *Industrial Rentals, Inc.* and in *Nationwide Insurance Co.,*[FN35] the Court analyzed the felony murder statute as a whole, giving full effect to all the words and pertinent statutory language to

© 2006 Thomson West. No Claim to Orig. U.S. Govt. Works.

Page 9 of 15

Not Reported in A.2d Page 8

Not Reported in A.2d, 2004 WL 396407 (Del.Super.)
**(Cite as: Not Reported in A.2d)**

produce the most reliable, well-balanced outcome. In the Court's opinion, the two phrases, "in the course of" and "in furtherance of," separated by the conjunctive "and," and construed together, "[g]ive the sense the statute requires both that the murder occur during the felony and that the murder occur to help move the felony forward." FN36 Therefore, the Court reasoned, "[f]elony murder cannot attach unless the murder is a consequence of the felony and is intended to help the felony progress." FN37 Adopting this line of reasoning, the Court concluded that:

FN34. *Williams,* 818 A.2d at 912.

FN35. *See Industrial Rentals, Inc. v. New Castle County Board of Adjustment,* 776 A.2d 528, 530 (Del.2001); *see also Nationwide Insurance Co. v. Graham,* 451 A.2d 832, 834 (Del.1982).

FN36. *Williams,* 818 A.2d at 912.

FN37. *Id.*

[T]o the extent that the *Chao* opinion states that the 'in furtherance of' language of the statute addresses solely the identity of the person who is committing the actual killing, (footnote omitted) it is overruled. Accordingly, we adhere to the holding of *Weick* and hold that the felony murder language requires not only that the defendant, or his accomplices, if any, commit the killing [sic] but also that the murder helps to move the felony forward. FN38

FN38. *Id.* at 913.

Applying the holding in *Williams* to the case at bar, it is evident that, while the three murders committed by the Defendant were committed during, and a direct consequence of, the underlying felony of arson, they did not occur to either help move, or progress, the felony forward. Simply put, the Defendant did not cause the deaths of the three members of the Rivera family in order to promote or further the fire that he started by pouring accelerant onto a hot burner.

Thus, based on the "new right" established in accordance with the redefining of the "in furtherance of" language contained in 11 *Del. C.* § 636(a)(2) as recognized for the first time in *Williams,* Defendant has met his burden of proof of establishing a "colorable claim" of injustice. Defendant's claim qualifies under the narrow application of the "fundamental fairness" exception contained in Rule 61(i)(5).

Turning to Defendant's two other convictions for Assault First Degree, in consideration of the Delaware Supreme Court's applied reasoning in *Williams,* the Court can only deduce that the new meaning given to the "in the course of" and "in furtherance of" language contained in the first degree murder statute, also applies to the relevant statute governing Assault in the First Degree, 11 *Del. C.* § 613(a)(4), FN39 under which the Defendant was originally convicted. Extrapolating the *Williams* decision to 11 *Del. C.* § 613(a)(4), the Court concludes that Defendant cannot be found guilty of two counts of Assault in the First Degree because he did not cause the physical injuries to his victims in order to facilitate or further the fire he started. As a result, Defendant's claim with respect to the two assault convictions also qualifies under the narrow application of the "fundamental fairness" exception contained in Rule 61(i)(5).

FN39. Section 613, Assault in the first degree, provides in part:
(a) A person is guilty of assault in the first degree when: ... (4) In the course of or in furtherance of the commission or attempted commission of a felony or immediate flight therefrom, the person intentionally or recklessly causes serious physical injury to another person;.... Del.Code Ann. tit. 11, § 613(a)(4) (2001 & Interim Supp.2003).

*7 Based on all of the foregoing, the Court holds that Defendant's three convictions for felony Murder in the First Degree, IN96-12-0754, IN-96-12-0755 and IN97-01-1773, respectively, and his two convictions for Assault in the First Degree, IN97-01-1774 and IN97-01-1776,

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

respectively, are hereby VACATED.

*Appropriate Relief*

Having vacated the above convictions, the Court's next responsibility is to re-sentence the Defendant for these same convictions, while remaining cognizant of the Court's former findings of fact, conclusions of law, and the evidence admitted at trial. At the time the Court rendered its verdict, it found: 1) beyond a reasonable doubt, that the Defendant started the fire intentionally; [FN40] 2) the Defendant's conduct and/or *mens rea* with respect to all the indicted criminal offenses met the criteria of "recklessly" as defined in the Delaware Code; [FN41] 3) the Defendant's conduct and/or *mens rea* with respect to all the indicted criminal offenses did not meet the criteria of "criminal negligence" as defined in the Delaware Code; [FN42] and 4) the Defendant did not intentionally cause the deaths of his three victims. [FN43]

FN40. Transcript of Trial Record, October 23, 1997, at 1-6 (hereinafter "Tr. Trial R. at ___.").

FN41. Tr. Trial R. at 6.

FN42. Tr. Trial R. at 7.

FN43. Tr. Trial R. at 9.

In view of the applicable statutes contained within the Delaware Code concerning "acts causing death," the question the Court must consider is whether to modify the three felony Murder in the First Degree convictions to Murder in the Second Degree convictions or to Manslaughter convictions. The shocking nature of the crimes, and the manner in which the victims died, coupled with the wanton, reckless, disregard that the Defendant manifested for human life, are clearly determinative factors weighing heavily in favor of consideration of the " cruel, wicked and depraved indifference to human life" standard contained within the Murder in the Second Degree statute, 11 *Del. C.* § 635(1).[FN44] In comparison, under the Manslaughter statute, 11 *Del. C.* § 632(1), the Defendant's appalling actions would be ameliorated to the more subtle degree of behavior prescribed as "recklessly causing the death of another." [FN45]

FN44. § 635, Murder in the Second Degree, provides in part:
A person is guilty of murder in the second degree when: (1) The person recklessly causes the death of another person under circumstances which manifest a cruel, wicked and depraved indifference to human life;.... Del.Code Ann. tit. 11, § 635(1) (2001 & Interim Supp.2003).

FN45. § 632, Manslaughter, provides in part:
A person is guilty of manslaughter when: (1) The person recklessly causes the death of another person;.... Del.Code Ann. tit. 11, § 632(1) (2001 & Interim Supp.2003).

In *Waters*, the Delaware Supreme Court provided a concise and well-defined interpretation of the meaning of "cruel, wicked and depraved indifference to human life" to be applied in the context of the State's second-degree murder statute. [FN46] The defendant in *Waters* challenged the constitutionality of the second-degree murder statute, contending that these statutory words were vague. Because the language is not defined in Delaware's Criminal Code, the Court held that these words are to be given their 'commonly accepted meaning' and that there was no vagueness problem. [FN47] Consulting the Commentary to the Delaware Criminal Code [FN48] for guidance in differentiating between the degrees of severity for second-degree murder versus manslaughter,[FN49] the Court noted:

FN46. *Waters v. State,* 443 A.2d 500 (Del.1982).

FN47. *Waters,* 443 A.2d at 504-06.

FN48. Del.Crim.Code Commentary, 191 (1973).

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Page 11 of 15

Not Reported in A.2d Page 10

Not Reported in A.2d, 2004 WL 396407 (Del.Super.)
**(Cite as: Not Reported in A.2d)**

FN49. Earlier in its opinion, the Court began its discussion by noting that, "[t]he basic difference between Manslaughter and Murder in the Second Degree, under the governing Statutes, is that the latter requires a showing that the homicide was committed 'under circumstances which manifest a cruel, wicked and depraved indifference to human life,' while the former does not. Both offenses require a ' reckless' state of mind." *Waters,* 443 A.2d at 502-03.

[I]t will be a jury question in each case whether a killing is so serious in its circumstances to amount to second-degree murder, or is only manslaughter. The distinction is one of degree only. The decision turns on the actor's conduct. The State will need to prove precisely what the defendant did which supports its contention that his attitude to human life was 'cruel, wicked, and depraved." His own words would be relevant, as would his choice of a particular modus operandi or a particular weapon. The State must also prove that he was 'reckless' with regard to death. That is, he must have perceived and consciously disregarded a substantial and unjustifiable risk that death would be caused by his conduct-a risk that constitutes a 'gross deviation ' from a reasonable standard of conduct, in the light of all the surrounding circumstances, including the purposes of his activity.[FN50]

FN50. *Id.* at 505.

***8** The Commentary to the Criminal Code, the Court suggests, makes clear that the drafters of the Code relied substantially on long-standing precedent in arriving at the wording of the Murder in the Second Degree statute. [FN51] The Commentary borrows heavily from the case of *State v. Winsett,* [FN52] wherein the Court, in instructing the jury, stated that, "[m]urder in the second degree is where the killing is done, not with express malice, but, rather, with implied or constructive malice, that is, where the malice is inferred from acts actually proved." [FN53] "The law considers that he who commits a cruel act voluntarily, does it maliciously." [FN54] According to the Court in *Winsett:*

FN51. *Id.* at 504.

FN52. *State v. Winsett,* 205 A.2d 510 (Del.1964).

FN53. *Winsett,* 205 A.2d at 515-16.

FN54. *Id.*

[M]urder in the second degree, therefore, is where the killing is done without the premeditation or deliberate mind required to make the act murder in the first degree, but nevertheless is done without justification or excuse, and without adequate provocation, and with a wicked and depraved heart, or with a cruel and wicked indifference to human life.[FN55]

FN55. *Id.*

In *Brinkley,* the Court ruled that "a cruel, wicked and depraved indifference to human life" could be found where the "intentional acts (of the defendant) were so fraught with danger ... -so likely to cause death or great bodily harm ..." [FN56]

FN56. *Waters,* 443 A.2d at 505 (quoting *Brinkley v. State,* 233 A.2d 56, 58 (Del.1967)); *accord Hallowell v. State,* 298 A.2d 330 (Del.1972).

At the close of Defendant's trial, this Court found that the Defendant "recklessly" started the fire, as defined in 11 *Del. C* . § 231(c), which ultimately resulted in three family members suffocating to death while they slept, and caused multiple injuries to others. It was the Court's findings that:

[T]he defendant, by shaking and poring an accelerant over a burner [sic] which he turned on to high, in an apartment building occupied by many people, was clearly aware of a substantial and unjustifiable risk that death would result from his conduct. The defendant consciously disregarded this risk. The risk was of such a nature and degree that disregard thereof constituted a gross deviation from the standard of conduct that a reasonable person would observe in the situation. A reasonable

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Page 12 of 15

Not Reported in A.2d

Page 11

Not Reported in A.2d, 2004 WL 396407 (Del.Super.)
**(Cite as: Not Reported in A.2d)**

person would not have simply disregarded such a risk.[FN57]

FN57. Tr. Trial R. at 9.

The Defendant cannot rely on the fact that he was unduly intoxicated as a justification for his actions at the time of his criminal behavior. If the Defendant was not aware of the risk involved, his lack of knowledge would only have been a result of his inebriated state. It is well settled law that voluntary intoxication is not a defense to a criminal act in Delaware. [FN58] Moreover, the Court finds that Defendant acted with an abundance of a "cruel, wicked and depraved indifference to human life" when, after starting the fire, he walked blithely from the kitchen and simply resumed his packing. As the fire accelerated and grew, Defendant did not shout for help, awake the children, call to Darlene for assistance, dial 911, or turn off the burner and attempt to douse the flames.[FN59] Instead, he walked away from the fire into the bathroom, and eventually ended up on the patio.[FN60]

FN58. Del.Code Ann. tit. 11, § 421 (2001 & Supp.2002); *Wyant v. State,* 519 A.2d 649 (Del.1986).

FN59. Tr. Trial R. at 5.

FN60. Tr. Trial R. at 5.

***9** In short, if the Defendant committed the same odious crimes today, and appeared before this Court, the Court would most assuredly have found that the Defendant's actions, as to the three victims who died, constituted Murder in the Second Degree.

In its response to Defendant's Rule 61 motion, the State has elected to modify the judgment of conviction, with respect to the murders, to the lesser offense of Manslaughter. In recognition of the fact that Defendant did not request a jury to weigh the issue of the existence of the additional element of " cruel, wicked, and depraved indifference to human life" necessary for a second-degree murder conviction, and the fact that the State did not introduce or prove this additional element at trial, the Court adopts the State's recommendation with respect to re-sentencing of the Defendant. The Court also acknowledges the fact that at the time of Defendant's trial, the State was focused on pursuing a case-in-chief predicated on the then-existent murder first-degree statute, believing that the murders were committed "in the course of" and "in furtherance of" the underlying felony, as interpreted by case law at that time.

In accord with the rationale underlying the holding in *Waters,* which recognized plain and reversible error in not charging the jury as to the commonly accepted meaning of "cruel, wicked, and depraved indifference to human life" as that language was used in the second-degree murder statute under which the defendant was convicted, this Court finds that the maximum benefit to the Defendant under the facts of this case would be reduction of his three Murder in the First Degree convictions to Manslaughter.

Hence, in accordance with the Delaware Supreme Court's decision in *Williams,* a re-sentencing hearing shall be held at which time Defendant's convictions, as enumerated above, will be vacated, a new verdict will be entered on the record, and Defendant will be re-sentenced on the following convictions:

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Page 13 of 15

Not Reported in A.2d Page 12
Not Reported in A.2d, 2004 WL 396407 (Del.Super.)
**(Cite as: Not Reported in A.2d)**

| | | |
|---|---|---|
| IN96-12-0754 | Manslaughter | Steven Rivera |
| IN96-12-0755 | Manslaughter | Frances Rivera |
| IN97-01-1773 | Manslaughter | Robert Rivera |
| IN97-01-1774 | Assault Second Degree | Jeremy Rivera |
| IN97-01-1776 | Assault Second Degree | Emily Miller |

*Double Jeopardy Not Implicated*

Finally, the Court must examine any potential constitutional ramifications resulting from the r e-sentencing of these convictions, which might adversely affect Defendant's right to be free from double jeopardy and/or a violation of his due process rights. The Double Jeopardy Clause, imbued in the Fifth Amendment and applicable to the States through the Fourteenth Amendment, provides that no person "shall ... be subject for the same offence to be twice put in jeopardy of life or limb." FN61 The language of the Delaware Constitution mirrors the language in the federal provision.FN62 In *United States v. DiFrancesco,* the United States Supreme Court defined the legal principles inherent in the Clause as engendering more than a safeguard mechanism protecting individuals from the perils of being twice convicted for an alleged offense.FN63 The Court extended the purpose of the Clause such that the constitutional prohibition against double jeopardy applies also to punishments that would follow from a second conviction for the same offense. FN64 Accordingly, the Clause protects against both multiple prosecutions and multiple punishments for the same offense.FN65

FN61. U.S. Const. amend. V.

FN62. "[N]o person shall be for the same offense twice put in jeopardy of life or limb ..." Del. Const. art. I, § 8.

FN63. "The constitutional prohibition against 'double jeopardy' was designed to protect an individual from being subjected to the hazards of trial and possible conviction more than once for an alleged offense.... The underlying idea, one that is deeply ingrained in at least the Anglo-American system of jurisprudence, is that the State with all its resources and power should not be allowed to make repeated attempts to convict an individual for an alleged offense, thereby subjecting him to embarrassment, expense and ordeal and compelling him to live in a continuing state of anxiety and insecurity, as well as enhancing the possibility that even though innocent he may be found guilty." *United States v. DiFrancesco,* 449 U.S. 117, 127-28 (1980) (quoting *Green v. United States,* 355 U.S. 184, 187-88 (1957)).

FN64. *DiFrancesco,* 449 U.S. at 129.

FN65. *Id.* at 129 (quoting *North Carolina v. Pearce,* 395 U.S. 711, 717 (1969)).

***10** Adopting the United States Supreme Court's holdings in two decisive cases that challenged double jeopardy violations in re-sentencing procedures, FN66 the Delaware Supreme Court held in ***White v. State*** that double jeopardy is not implicated when a defendant has no legitimate expectation of finality in his original sentence.FN67 To elaborate, "[a]fter a related sentence has been vacated on appeal, a trial judge may resentence a defendant up to the combined duration of the original sentences without violating the constitutional prohibition against double jeopardy." FN68 Further, the Court emphasized that a defendant's due process rights are not infringed upon either.FN69

FN66. *See Pennsylvania v. Goldhammer,* 474 U.S. 28, 30 (1985) (per curiam);

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

*United States v. DiFrancesco,* 449 U.S. 117, 136-37 (1980).

FN67. *White v. State,* 576 A.2d 1322, 1323 (Del.1990) (holding that the trial court's resentencing after a related charge was vacated on appeal, did not violate the constitutional prohibition against double jeopardy because the appellant had no legitimate expectation of finality in his sentence); *accord Deangelo v. State,* 2003 WL 21321719 (Del.).

FN68. *White,* 576 A.2d at 1328.

FN69. *Id.* at 1328-29.

The Court in *White* overruled the prevailing rule, which it had previously established in *Hunter v. State ("Hunter's"* rule) [FN70] regarding double jeopardy implications at re-sentencing, and returned to the limitation that it had previously abandoned in *Davis v. State* [FN71] in favor of *Hunter's* rule. That is to say, the Court in *White* reinstated only that portion of *Davis* addressing the problem of double jeopardy in re-sentencing. "Specifically, *Davis* held that '[a]t resentencing, the trial judge will not be limited to the mandatory minimum sentence imposed initially for the attempted robbery conviction, but the sentence may not exceed the combined duration of the two terms imposed before the appeal." ' [FN72]

FN70. *Hunter v. State,* 420 A.2d 119, 132 (Del.1980) (holding that a trial judge could not resentence a defendant to a term greater than the sentence originally imposed if the defendant had already begun to serve the sentence).

FN71. *Davis v. State,* 400 A.2d 292, 297 (Del.1979) (holding that a trial judge was only limited in resentencing a defendant by the combined duration of the sentences imposed before appeal).

FN72. *White,* 576 A.2d at 1323 n. 2 (quoting *Davis,* 400 A.2d at 297).

As the similarity of circumstances will prove, the *Davis* rule, as reinstated in *White,* can be applied to the instant case. Just as the *White* Court determined that the defendant who challenged his robbery and weapons convictions on appeal based on double jeopardy grounds, had no legitimate expectation of finality in his original sentence, so this Court finds that the Defendant who challenged his three Murder in the First Degree convictions and two Assault First Degree convictions in his motion for postconviction relief, based on principles of stare decises, had no legitimate expectation of finality in his original sentence.

While the defendant in *White* appealed his convictions on double jeopardy grounds, whereas this Defendant seeks collateral relief to have the five convictions vacated and judgment of acquittal entered, or a new trial, [FN73] on due process grounds (a new right established by overturned law), rather than on double jeopardy grounds, the Court has determined that Defendant's convictions duly implicate both double jeopardy and due process principles of constitutionality. Even though Defendant's sentence was not vacated on appeal, as in *White,* but rather reduced pursuant to a Rule 61 motion for postconviction relief, the Court finds that the circumstances are so similar that the *Davis* rule is appropriate in this case as well.

FN73. In the Rule 61 motion for postconviction relief, Defendant concludes by requesting that "the convictions for felony murder and felony assault be reversed, and the sentences vacated. In the reply to the State's response, Defendant submits that the Court "vacate the convictions for Murder 1st and Assault 1st, and enter judgments of acquittal or, in the alternative, grant the defendant a new trial."

Applying the rule of law set forth in *White,* therefore, this Court may re-sentence the Defendant up to the combined duration of the original sentences without violating the constitutional prohibition against double jeopardy or infringement of due process rights. His original sentences were three life imprisonment terms and twenty years

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Page 15 of 15

Not Reported in A.2d Page 14

Not Reported in A.2d, 2004 WL 396407 (Del.Super.)
**(Cite as: Not Reported in A.2d)**

incarceration at Level V for the two Assault First Degree offenses. Upon re-sentencing, Defendant's original sentence may not increase, but, could actually decrease. This fact, the Court notes, is no conciliation to those remaining members of the Rivera family. Thus, any potential claim by the Defendant that his constitutional right to be free from double jeopardy has been violated, and/or that his due process rights have been infringed upon, must fail.

*Conclusion*

***11** For all of the foregoing reasons, Defendant's Motion for Postconviction Relief Pursuant to Superior Court Criminal Rule 61, though procedurally barred pursuant to 61(i)(1), is substantively successful under the "fundamental fairness" exception pursuant to 61(i)(5), and is hereby GRANTED.

In accordance with granting Defendant's motion, the Court will conduct a hearing, at which time the Court will re-sentence the Defendant.

IT IS SO ORDERED.

Del.Super.,2004.
State v. Kirk
Not Reported in A.2d, 2004 WL 396407 (Del.Super.)

END OF DOCUMENT

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

**H**

Briefs and Other Related Documents
(The decision of the Court is referenced in the Atlantic Reporter in a 'Table of Decisions Without Published Opinions.')

Supreme Court of Delaware.
**Mark KIRK**, Defendant Below-Appellant,
v.
STATE of Delaware, Plaintiff Below-Appellee.
**No. 72, 2005.**

Submitted Oct. 7, 2005.
Decided Dec. 23, 2005.
Reargument Denied Jan. 9, 2006.

**Background:** Defendant filed third pro se motion for postconviction relief after his convictions for felony murder, first-degree assault, and other offenses were affirmed and his two subsequent pro se motions for postconviction relief were denied. The Superior Court, New Castle County, granted motion, reduced defendant's convictions for felony murder to convictions for lesser-included offense of manslaughter and his convictions for first-degree assault to convictions for lesser-included offense of second-degree assault, and resentenced him. Defendant appealed.

**Holding:** The Supreme Court, Myron T. Steele, C.J., held that five-year statute of limitations for manslaughter and second-degree assault did not bar trial court from resentencing defendant for those lesser-included offenses.

Affirmed.

West Headnotes

**Criminal Law 110 ⚷1586**

110 Criminal Law
110XXX Post-Conviction Relief
110XXX(C) Proceedings
110XXX(C)1 In General
110k1586 k. Time for Proceedings. Most Cited Cases

Five-year statute of limitations for manslaughter and second-degree assault did not bar trial court, as postconviction remedy, from reducing defendant's convictions for felony murder to convictions for lesser-included offense of manslaughter and his convictions for first-degree assault to convictions for lesser-included offense of second-degree assault and resentencing him accordingly, even though resentencing order was issued more than five years after original sentencing; trial court did no more than resentence defendant on lesser-included charges that related back to his original convictions. Del.Code Ann. tit. 11, §§ 205(b)(1), 612(a)(1), 613(a)(4), 632(1), 636(a)(2).

Court Below-Superior Court of the State of Delaware in and for New Castle County, Cr.A. Nos. IN96-12-0754; 0755; 0556; IN97-01-1773-1776.

Before STEELE, Chief Justice, JACOBS and RIDGELY, Justices.

*ORDER*

***1** This 23rd day of December 2005, upon consideration of the briefs on appeal and the record below, it appears to the Court that:

(1) The defendant-appellant, Mark Kirk, filed an appeal from the Superior Court's February 11, 2005 re-sentencing order following the granting of Kirk's motion for postconviction relief. We find no merit to the appeal. Accordingly, we AFFIRM.

(2) In 1997, Kirk was found guilty in a Superior Court bench trial of three counts of Murder in the First Degree (Felony Murder), two counts of Assault in the First Degree, one count of Arson in the Third Degree and one count of Assault in the Third Degree.[FN1] Kirk was sentenced to three

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Exhibit 4

respect to all the indicted criminal offenses did not meet the criteria of "criminal negligence" as defined in the Delaware Code; and 4) the Defendant did not intentionally cause the deaths of his three victims. (Footnotes omitted.)

The Superior Court, finally, noted the following remarks by the trial judge:*2 The defendant, by shaking and poring (sic) an accelerant over a burner which he turned on to high, in an apartment building occupied by many people, was clearly aware of a substantial and unjustifiable risk that death would result from his conduct. The defendant consciously disregarded this risk. The risk was of such a nature and degree that disregard thereof constituted a gross deviation from the standard of conduct that a reasonable person would observe in the situation. A reasonable person would not have simply disregarded such a risk. (Footnotes omitted.)

Based upon the findings of the trial judge, the Superior Court reduced Kirk's felony murder convictions [FN8] to convictions of the lesser-included charge of manslaughter [FN9] and reduced his first-degree assault convictions [FN10] to convictions of the lesser-included charge of second-degree assault.[FN11]

FN8. Del.Code Ann. tit. 11, § 636(a)(2).

FN9. Del.Code Ann. tit. 11, § 632(1); *Collins v. State*, 420 A.2d 170, 178 (Del.1980).

FN10. Del.Code Ann. tit. 11, § 613(a)(4).

FN11. Del.Code Ann. tit. 11, § 612(a)(1); *Johnson v. State*, 711 A.2d 18, 30-31 (Del.1998).

(6) Kirk's re-sentencing took place at a subsequent hearing at which he was represented by appointed counsel.[FN12] The Superior Court sentenced him to 10 years of Level V incarceration on each of the three convictions of Manslaughter and to 8 years of Level V incarceration on each of the two convictions of Assault in the Second Degree, a total of 46 years of Level V incarceration. Kirk's sentences for Arson in the Third Degree and Assault in the Third Degree remained as before 2 years and 1 year at Level V incarceration, respectively.

FN12. Kirk himself did not appear, having signed a written waiver of his right to be present.

(7) Kirk's counsel filed a notice of appeal and an opening brief in this Court, claiming, first, that Kirk's constitutional rights were violated when the Superior Court failed to afford him a new trial before a jury and, second, that the statute of limitations barred the Superior Court from entering convictions on the manslaughter charges. Alleging that his counsel failed to consult with him regarding the issues raised in the brief, Kirk requested that his counsel move to withdraw. Kirk's counsel was permitted to withdraw and Kirk, in turn, was granted leave to proceed pro se in this appeal.

(8) Kirk's sole pro se claim is that the Superior Court lacked jurisdiction to enter convictions on the manslaughter and second-degree assault charges because the 5-year statute of limitations as to those charges already had run. [FN13] Kirk argues that, because he originally was sentenced on December 3, 1997, the 5-year statute of limitations on those charges expired on December 3, 2002, thereby rendering the Superior Court's February 11, 2005 sentencing order invalid and in violation of his due process rights. Kirk asks that judgment of acquittal be entered as to all convictions on which he was re-sentenced.

FN13. Del.Code Ann. tit. 11, § 205(b)(1).

(9) Kirk's, and his former counsel's, claims that the Superior Court's actions are barred by the statute of limitations and violate his constitutional rights are based upon the assumption that, in implementing a remedy for the miscarriage of justice, the Superior Court initiated a new prosecution against Kirk. That assumption is erroneous. Rather, the Superior Court, properly relying on the findings of the Superior Court judge who presided over Kirk's trial,

© 2006 Thomson West. No Claim to Orig. U.S. Govt. Works.

did no more than re-sentence Kirk on lesser-included charges that related back to his original convictions. The statute of limitations is not implicated in such a situation.[FN14] Nor do we find that the remedy implemented by the Superior Court, which was fully consistent with well-settled Delaware law,[FN15] violated any of Kirk's constitutional rights.[FN16]

FN14. The case of *Cane v. State,* 560 A.2d 1063, 1066 (Del.1989), which is cited by Kirk, is distinguishable from this situation. There, an indictment for manslaughter five years after the crime was committed was invalid because it was outside the statute of limitations.

FN15. *Walton v. State,* 821 A.2d 871, 879 (Del.2003) (the defendant's conviction of first-degree robbery was reversed and the matter remanded for a new sentencing for second-degree robbery); *Word v. State,* 801 A.2d 927, 933 (Del.2002) (the defendant's conviction of first-degree robbery was reversed and the matter remanded for a new sentencing for second-degree robbery); *Collins v. State,* 420 A.2d at 178 (the defendant's conviction of second-degree murder was reversed and the matter remanded for a new sentencing for manslaughter as a lesser-included offense of first-degree murder).

FN16. *Collins v. State,* 420 A.2d at 178 ("It is within the power of this Court ... to order a modification of the judgment below to reflect the reduction in the degree of homicide committed.... The modification does not deprive defendant of a fair trial or otherwise prejudicially affect his conviction.")

*3 NOW, THEREFORE, IT IS ORDERED that the judgment of the Superior Court is AFFIRMED.

Del.Supr.,2005.
Kirk v. State

889 A.2d 283, 2005 WL 3526325 (Del.Supr.)

Briefs and Other Related Documents (Back to top)

- 2005 WL 2886251 (Appellate Brief) Appellate's Reply Brief (Sep. 20, 2005) Original Image of this Document (PDF)
- 2005 WL 2545314 (Appellate Brief) State's Answering Brief (Sep. 09, 2005) Original Image of this Document with Appendix (PDF)
- 2005 WL 2312581 (Appellate Brief) Appellate's Opening Brief (Jan. 01, 2005) Original Image of this Document with Appendix (PDF)

END OF DOCUMENT

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.